IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTONIO ORLANDER JERIDO, | ) | |
| AIS # 169480, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CV-60-WHA-CSC |
| | ) | (WO) |
| | ) | |
| MIKE HENLINE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Antonio Jerido, a state inmate, in which he challenges safety conditions present during his prior term of incarceration at the Elmore County Jail.  Specifically, Jerido alleges that the Correctional Defendants acted with deliberate indifference, when on May 14, 2018, they transported him in an unairconditioned van with a broken seat which flipped over causing him injury.  (Doc. 1 at p. 3).  He also alleges that all Defendants denied him adequate medical treatment for injuries received when the van seat overturned.  *Id.*  He further claims that while in terrible pain he was forced to lay in a cell for five days without any medical attention. (Doc. 1 at pp. 6 and 19).  He names as Correctional Defendants Warden Mike Henline and Officer McDowell.  (Doc. 1 at p. 2). He also names as Medical Defendants

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

Nurses James Norman[2] and Ranier Deramus[3].  *Id.*  He sues each Defendant in his individual capacity and seeks money damages.  (Doc. 1 at p. 10).

The Defendants filed special reports and relevant evidentiary materials in support of their reports, including affidavits, addressing the claims raised in the complaint, as amended.  In these documents, the Medical and Correctional Defendants maintain they did not act with deliberate indifference to Jerido's medical needs and the Correctional Defendants deny they subjected Jerido to unconstitutional conditions.  (Docs. 15, 34 and 39). The Defendants also raise the defense of exhaustion in their special report.  (Doc. 15). Indeed, the Prison Litigation Reform Act ("PLRA") requires that "inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit." *Jones v. Bock,* 549 U.S. 199, 202 (2007).  Thus, the Defendants argue that because the Elmore County Jail utilizes a grievance procedure and the Plaintiff failed to file an appeal from his grievance underlying the allegations of his complaint, he has failed to exhaust his administrative remedies and his claims are barred.  *Id.*

After reviewing the special reports filed by the Defendants, the court issued an order on June 10, 2019 directing Jerido to file a response to each of the arguments set forth by the Defendants in their reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  (Doc. 45 at pp. 2-3).  The order specifically

---

[2]  Nurse James Norman has been a registered nurse in the state of Alabama since 1995.  At the time of Jerido's complaint he was employed by Quality Correctional Healthcare, Inc., which provided medical services to the inmates at the Elmore County Jail. (Doc. 39-1 at p. 2).

[3]  Nurse Ranier Deramus has been a licensed practical nurse in the state of Alabama since 2003. At the time of Jerido's complaint he was employed by Quality Correctional Healthcare, Inc., which provided medical services to the inmates at the Elmore County Jail. (Doc. 39-2 at p. 2).

cautioned that "**unless within fifteen (15) days from the date of this order a party . . .**

**presents sufficient legal cause why such action should not be undertaken** . . . the court

may at any time [after expiration of the time for the plaintiff filing a response to this order]

and **without further notice to the parties** (1) treat the special reports and any supporting

evidentiary materials as a motion for summary judgment and (2) after considering any

response as allowed by this order, rule on the motion for summary judgment in accordance

with the law."  (Doc. 45 at p. 3).  Jerido filed a sworn response to this order on June 26,

2019.  (Doc. 47).  Thereafter, Jerido filed supplements to this response.  (Docs. 61, 63, and

79).

## II.  STANDARD OF REVIEW

Based on the foregoing, the court deems it appropriate to treat the special report

filed by the Defendants as a motion to dismiss with respect to the exhaustion defense.  Thus,

this case is now pending on the Defendants' motion to dismiss.  *Bryant v. Rich*, 530 F.3d

1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion [defense].

. . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should

be raised in a motion to dismiss, or be treated as such if raised in a motion for summary

judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014)

(holding that the district court properly construed defendant's "motion for summary

judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").

However, to the extent that the court concludes that the Plaintiff has properly exhausted

his administrative remedies as to any claim, the court will address the merits of those claims

on summary judgment.

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

### III. FACTS

On May 14, 2018, the Plaintiff traveled in a van from Donaldson Correctional Facility to Elmore County Jail for the purpose of attending a court hearing. Defendant Officers McDowell and Evans[4] manned the transport van. When the van was a few minutes from the Jail, the seat in which Plaintiff sat flipped over. (Doc. 15-2 at p. 3). The Plaintiff claims he was injured when the seat flipped. He also claims that seat was not secured to the floor and that the van was unairconditioned and the windows would not roll down. Defendant McDowell testified that the van's air conditioning unit was functional on May 14, 2018, but that the van's rear seating area was not equipped with air vents. He specifically states that he "turn[ed] the van's air condition unit on high and angled the air vents towards the rear seats. (Doc. 34-1 at p. 2). McDowell also testified that he had no personal knowledge of any safety issues with van. (Doc. 34-1 at p. 3). Further after the seat flipped, McDowell "immediately radioed the jail to be on standby and to have the medical staff ready to evaluate the inmates." (Doc. 15-2 at p. 3).

Plaintiff further claims that Officer McDowell and Warden Henline refused to call paramedics as he requested and that Defendant Nurses Norman and Deramus refused to treat him on the day of the incident. (Doc. 1 at pp. 2-10). Both Norman and Deramus testified that they were advised by the transport officer of the flipped seat, and they reported to the sally port at the Elmore County Jail to evaluate the inmates involved. Both nurses confirmed that Jerido had no obvious physical injuries, could walk without difficulty and

---

[4] By June 5, 2019 Order, Evans was dismissed as a party to this action based upon the Magistrate Judge's Recommendation granting the Plaintiff's Motion to Dismiss Evans. (Doc. 41).

showed no signs of distress.  (Doc. 39-1 at p. 3; Doc. 39-2 at pp. 3-4).  Based on their observation and evaluation, neither nurse saw any reason to deny Jerido's admittance to the Elmore County Jail.  *Id.*  Other than basic first aid, Officers at Elmore County Jail do not have medical training, and it is the Jail's policy to defer to and rely upon the professional opinions of doctors and nurses provided at the Jail.  (Doc. 15-2 at p. 3; Doc. 15-2 at p. 3).

Jerido further claims that all Defendants continued to refuse him treatment after he filed an inmate request slip for medical attention on May 16, 2018.  (Doc. 1-1).  However, the undisputed evidence shows that Captain Tuck responded to this request on May 17, 2018, advising Plaintiff that he had spoken with medical who reported Plaintiff suffered no serious injuries, and he should follow up with Donaldson medical staff upon his arrival.  *Id.*  Plaintiff did not appeal from denial of his request.  Plaintiff was returned to Donaldson Correctional Facility the morning of May 18, 2018.

The grievance appeals procedure at Elmore County Jail provides that within 24 hours of receiving a response to a grievance an inmate may appeal to the jail administrator on a separate grievance form.  If the inmate is dissatisfied with the outcome of the appeal, within 24 hours he may appeal in writing to the Chief Deputy.  He then has 24 hours to appeal again in writing to the Sheriff.  The appeal to the Sheriff is the final appeal available. (Doc. 15-1 at pp. 4-5; Doc. 15-6 at pp. 36-39).

## III.  DISCUSSION[5]

### A.  Exhaustion

The Defendants raise the defense of exhaustion in this action.  In addressing the

requirements of 42 U.S.C. § 1997e as to exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a
> precondition to filing an action in federal court." *Higginbottom v. Carter*,
> 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v.
> Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means that "until
> such administrative remedies as are available are exhausted," a prisoner
> is precluded from filing suit in federal court. *See id*. (affirming dismissal
> of prisoner's civil rights suit for failure to satisfy the mandatory
> exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279,
> 1286 (11th    Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a
> mandatory requirement on prisoners seeking judicial relief to exhaust
> their administrative remedies" before ***filing*** suit in federal court),
> *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc);
> *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that
> under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated
> in a state prison . . . must first comply with the grievance procedures
> established by the state department of corrections before filing a federal
> lawsuit under section 1983."); *Harper v. Jenkin*, 179 F.3d 1311, 1312
> (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit
> for failure to satisfy the mandatory exhaustion requirements of §
> 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328 (11th Cir. 1998)
> (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for
> failure to exhaust administrative remedies prior to filing suit in federal
> court).

---

[5] The court limits its review to the allegations set forth in the complaint, as amended.  (Docs. 1, 32, 42, 52 and 76).  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in original). Furthermore, the law is well-settled that "the question of exhaustion under the PLRA [is] a threshold matter that [federal courts must] address before considering the merits of the case. Because exhaustion is mandated by the statute, [a federal court has] no discretion to waive this requirement." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)). The court will therefore "resolve this issue first." *Myles*, 476 F. App'x at 366.

When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion." *Myles*, 476 F. App'x at 366 (internal quotation marks omitted) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Consequently, a district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust [without a hearing]. The judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (internal citations omitted). Based on the foregoing, the Eleventh Circuit

specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or other factfinder]." *Id*.

Upon review of the complaint, the Defendants' special reports and the undisputed evidentiary materials filed in support thereof and the Plaintiff's response to the special reports, the court concludes that the Defendants' motion to dismiss is due to be granted for the Plaintiff's failure to exhaust his Eighth Amendment claims for deliberate indifference to his safety and  to his medical needs. Indeed, it is undisputed that the Elmore County Jail had a grievance procedure in place which included appellate remedies. (Doc. 15-6 at pp. 36-39).  Plaintiff does not dispute that he failed to appeal from the denial of his request for medical attention.  (Doc. 1-1).

Rather, he argues that the appeal procedure at Elmore County Jail was unavailable to him because he was transferred to Donaldson Correctional Facility early the morning of May 18, 2018, just twelve hours after receiving the response from Captain Tuck.  (Doc. 47 at p. 4).   However, the court is unpersuaded by this argument since Plaintiff fails to demonstrate that he made any efforts to institute an appeal within this time frame. Specifically, during the twelve hours prior to his transport, the Plaintiff does not allege that he ever requested an appeal form or made any suggestion to any prison personnel of his desire to appeal this denial.  Thus, the court could dismiss this action solely on the basis of Plaintiff's failure to exhaust; however, as an alternative basis for dismissal, the court hereafter will address the merits of the Plaintiff's Eighth Amendment medical treatment and conditions claims.

**B.      Deliberate Indifference Generally**

The law is well-settled that establishment of both objective and subjective elements are necessary to demonstrate a violation of the protections afforded by the Eighth Amendment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official [was] aware of this substantial risk, the official must [have] react[ed] to this risk in an objectively unreasonable manner." *Marsh v. Butler Cnty. Ala.,* 268 F.3d 1014 at 1028–29 (11th Cir. 2001) *abrogated on other grounds by Bell Atl. Corp v. Twombly,* 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan,* 511 U.S. 825, 837–38 (1994); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual

Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983."  *Id*.

## C.    Deliberate Indifference to Medical Needs.

Jerido alleges that the Medical and Correctional Defendants acted with deliberate indifference to his medical needs when they denied him adequate medical treatment for injuries he received when the seat in the van in which he was transported overturned.  More

specifically, he alleges that the Defendants left him unattended and in severe pain for five days following his injury.  Furthermore, Jerido alleges that Correctional Defendants, as wardens or correctional officers, are responsible for ensuring that he receive appropriate medical treatment.  These assertions entitle Jerido to no relief.

To prevail on a claim of denial of medical treatment, an inmate must show the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000). Medical treatment of prisoners violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quotation marks and citation omitted). A prison official is not "deliberately indifferent" unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (finding, under *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat properly or a delay in such treatment") (citation and internal quotations omitted). "A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference." *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016). Within the Eleventh Circuit, medical malpractice and negligence do not constitute deliberate indifference:

> Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128

L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

Thus, to demonstrate deliberate indifference to a serious medical need, Jerido must show (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and his injury. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–1307 (11th Cir. 2009). To make this showing, Jerido must establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (finding that for liability to attach defendant must know and disregard excessive risk to prisoner's health or safety).

Regarding the objective component, a plaintiff must first show an objectively serious medical need, followed by a response by defendants inadequate enough to constitute an unnecessary and wanton infliction of pain, not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law. *Taylor*, 221 F.3d at 1258. (Citations omitted). For the required subjective intent, a

plaintiff must show the public official acted with an attitude of "deliberate indifference," which requires two things: an awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and drawing of the inference. *Taylor*, 221 F.3d at 1258 (internal citations and quotations omitted).

Thus, deliberate indifference occurs only when a defendant knows of and disregards an excessive risk to inmate health or safety; is aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and draws that inference. *Farmer*, 511 U.S. at 837. An "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Further, neither a difference of opinion on appropriate treatment nor the fact that the treatment was ineffective gives rise to a deliberate indifference claim. *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding mere fact that inmate desires different mode of diagnosis does not amount to deliberate indifference); *Adams*, 61 F.3d at 1545 (stating that whether additional diagnostic techniques or forms of treatment should have been used "is a classic example of a matter for medical judgment" and not a basis for Eighth Amendment liability) (citation omitted). Indeed, when medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

Finally, in determining whether a delay in medical treatment constitutes deliberate indifference, courts consider the seriousness of the medical need, whether delay worsened

the medical condition, and the reason for the delay. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003). Additionally, when an inmate complains that a delay in medical treatment rises to the level of a constitutional violation, he "must place verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber v. Dixie Cty. Jail*, 206 F. App'x 931, 933 (11th Cir. 2006) (internal citation omitted). Finally, the subjective knowledge of risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citations omitted).

1.   **Medical Defendants.**   Jerido asserts that the Medical Defendants denied him adequate medical treatment for injuries he received when a seat in a van in which he was traveling overturned.   The Medical Defendants adamantly deny they acted with deliberate indifference to Jerido's medical needs during the time relevant to this complaint or at any other time.   Instead, the Medical Defendant Nurses, Deramus and Norman, submitted affidavits in response to the complaint filed by Jerido stating that they were advised by the transport officer of the flipped seat in the van, and they reported to the sally port at the Elmore County Jail to evaluate the inmates involved.   Both nurses confirmed that Jerido had no obvious physical injuries, could walk without difficulty and showed no signs of distress.   (Doc. 39-1 at p. 3; Doc. 39-2 at pp. 3-4).   Based on their observation and

evaluation, neither nurse saw any reason to deny Jerido's admittance to the Elmore County Jail. *Id.*

Under the circumstances of this case, the court concludes that the course of evaluation and treatment undertaken by the Medical Defendants did not violate Jerido's constitutional rights. Specifically, there is no evidence upon which the court could conclude that any member of the medical staff acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Rather, the evidence before the court demonstrates that two nurses examined Jerido immediately following the May 14, 2018 incident and concluded no further medical attention was necessary at that time. (Doc. 39-1 at p. 3; Doc. 39-2 at pp. 3-4). Whether medical personnel "should have [utilized] additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (internal citation omitted). In addition, to the extent Jerido complains that his physicians should have prescribed pain relievers or pursued some other mode of treatment, this allegation does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Hamm*, 774 F.2d at 1505 (holding that inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (holding that simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

As a result, the court concludes that the alleged lack of medical treatment did not constitute deliberate indifference.  In addition, Jerido has failed to present any evidence showing that the manner in which the Medical Defendants addressed his condition created a substantial risk to his health that the attending health care personnel consciously disregarded.  Indeed, to the extent that Jerido alleges that he was delayed treatment until transferred to Donaldson four days following the incident, the court likewise concludes this claim fails because Plaintiff has not "place[d] verifying medical evidence in the record" establishing the detrimental effect caused by the delay. *Surber,* 206 F. App'x at 933.[6]  The record is therefore devoid of evidence—significantly probative or otherwise—showing that any medical professional acted with deliberate indifference to a serious medical need experienced by Jerido.  Consequently, summary judgment is due to be granted in favor of the Medical Defendants.

**2. Correctional Defendants**.  To the extent that Jerido argues that the Correctional Defendants acted in a manner to prevent him access to treatment from professional medical personnel while incarcerated in the Elmore County Jail, the Court concludes that this argument lacks merit.  Indeed, it is clear from the medical records that the Correctional Defendants were not in any way involved in decisions regarding the medical treatment

---

[6]  The Court has carefully considered the medical evidence supplied by the Plaintiff which document his complaints of back pain. (Doc. 63-1 at pp. 1-41).  Specifically, these records include radiology reports dated May 25, 2018, which showed the Plaintiff suffered from "Degenerative disc disease, L3-4 and L4-5." (Doc. 63-1 at p. 33) and "Degenerative disc disease C5-6 and C6-7 . . . with cervical spasm." (Doc. 63-1 at p. 34).  These records also include a post-operative report dated October 19, 2019, almost eighteen months following the van incident, which diagnosed Plaintiff with "a herniated disk with cervical foraminal stenosis at C6-7 and C7-T1." (Doc. 63-1 at p. 1).  None of these records confirm any injury resulting from the May 14, 2018 incident.  Neither do they demonstrate any detrimental effect caused by the alleged five-day delay in treatment while Plaintiff was housed at Elmore County Jail.

provided to Jerido, as these decisions are made solely by healthcare professionals employed by the Jail. (Doc. 15-2 at p. 3 and Doc. 15-2 at p. 3).  Further, after the seat flipped Officer McDowell "immediately radioed the jail to be on standby and to have the medical staff ready to evaluate the inmates." (Doc. 15-2 at p. 3).  The nurses responded to this call, reported to sally port to examine Jerido and found Jerido had no obvious injuries causing him distress.  (Doc. 39-1 at p. 3; Doc. 39-2 at pp. 3-4).  Moreover, Captain Tuck responded to Plaintiff's subsequent request for medical attention within a day's time after checking with medical personnel who confirmed Jerido had no serious injuries.  Tuck advised Jerido to follow up with Donaldson medical staff upon his arrival. (Doc. 1-1).

Thus, Jerido has failed to establish deliberate indifference on the part of the Correctional Defendants.  Specifically, Jerido has not demonstrated that these Defendants were aware of facts establishing "an objectively serious medical need" nor that these defendants disregarded any known serious risk to Jerido's health.  *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Quinones*, 145 F.3d at 168 (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference); *Farmer*, 511 U.S. at 838 (failure to alleviate significant risk that officer "should have perceived but did not" does not constitute deliberate indifference).   Consequently, summary judgment is due to be granted in favor of the Correctional Defendants on Jerido's claim alleging deliberate indifference arising from the actions of medical personnel in treating his pain.

Insofar as Jerido seeks to hold the Correctional Defendants liable for the treatment provided by medical professionals, he is likewise entitled to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Even assuming *arguendo* that the Correctional Defendants exerted some control over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of *respondeat superior* [or vicarious liability]. . . .   A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties.   Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (internal quotation marks, citation and parentheses omitted); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)

(holding that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh,* 268 F.3d at 1035 (holding that a supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir. 1999) (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for actions of the Medical Defendants could attach to the other named defendants only if these defendants "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone,* 326 F.3d at 1360.

The record is clear that the Correctional Defendants did not personally participate or have any involvement, direct or otherwise, in the medical treatment provided to Jerido. (Doc. 15-2 at p. 3 and Doc. 15-2 at p. 3). The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the evaluation and treatment of Jerido based upon their professional judgment upon assessment of his physical condition. (Doc. 39-1 at p. 3; Doc. 39-2 at pp. 3-4).

In light of the foregoing, the Correctional Defendants can be held liable for decisions of medical personnel only if they undertook actions which bear a causal

relationship to the purported violation of Jerido's constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of the Correctional Defendants, Jerido must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so" or "a . . . custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or . . . facts [that] support an inference that [the correctional defendants] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so."  *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  After extensive review of the pleadings and evidentiary materials submitted in this case, it is clear that Jerdio has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that the Correctional Defendants directed medical personnel to act unlawfully or knew that they would act unlawfully and failed to stop such action.  In addition, Jerido has presented no evidence of obvious, flagrant or rampant abuse of continuing duration regarding his receipt of medical treatment in the face of which these Defendants failed to take corrective action.  Rather, Jerido was evaluated by two nurses immediately following the van incident on May 14, 2018 (Doc. 39-1 at p. 3; Doc. 39-2 at pp. 3-4), and was transported to Donaldson Correctional Facility on May 18, 2018, where he was instructed to follow-up with medical professionals at that facility. (Doc. 1-1). The undisputed records also demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by the Correctional Defendants.  Thus, the requisite causal connection does

not exist in this case and liability under the custom or policy standard is not justified. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

For the foregoing reasons, summary judgment is likewise due to be granted in favor of the Correctional Defendants with respect to liability based on the theory of respondeat superior. Furthermore, even had Jerido presented a proper basis for the claims lodged against the Correctional Defendants, the evidentiary materials before the court, including affidavits from the two nurses who evaluated Jerido immediately following the van incident, demonstrate that health care personnel did not act with deliberate indifference to his medical needs.

## D.   Deliberate Indifference -- Challenge to Safety and Conditions

Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Id*. at 346. Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Id*. at 348 (citation omitted). Prison conditions which may be "restrictive and even harsh, are part of the penalty that criminal offenders pay for their offenses against society" and, therefore, do not necessarily constitute cruel and unusual punishment within the meaning of the Eighth Amendment. *Id*. Conditions, however, may not be "barbarous" nor may they contravene society's "evolving standards of decency." *Id*. at 345–46. Although "[t]he Constitution

'does not mandate comfortable prisons' . . . neither does it permit inhumane ones[.]" *Farmer*, 511 U.S. at 832 (quoting *Rhodes*, 452 U.S. at 349).  Thus, a prisoner's conditions of confinement are subject to constitutional scrutiny.  *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eighth Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *Helling*, 509 U.S. at 31–32.  For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler v. Crosby*, 379 F.3d 1278, 1289–90 (11th Cir. 2004).  As with deliberate indifference claims, to demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834.  The court previously identified the applicable standard relevant to establishment of the objective and subjective elements of an Eighth Amendment claim. *See supra*. at pp. 10-11.

As previously noted, a prison official may likewise be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. at 828. "The known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference." *Brown v.*

*Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal citations and quotation marks omitted). As the foregoing makes clear, mere negligence "does not justify liability under section 1983[.]" *Id*.

As to the specific claim before the court, the Eleventh Circuit has upheld a lower court's dismissal of an inmate's claim alleging an Eighth Amendment violation based on injury resulting from travel in an allegedly unsafe van. *Smith v. Sec'y. for Dept. of Corr.*, 252 F. App'x 301, 302 (11th Cir. 2007). The court stated

> "[w]e can not say that riding in a van equipped with the manufacturer's car seats, seat belts, and windows is a necessity, such that riding in a van without these characteristics is a deprivation of the minimal measure of life's necessities or is something that modern society would find intolerable."

*Id.* at 304. (citation omitted). In so holding, the court followed the Eighth Circuit's ruling that a prisoner, who was paralyzed after a crash in a prison transport van where he was seated on a metal bench not fitted with safety restraints, failed to state a claim for relief because such practice "did not pose a substantial risk of serious harm to the prisoner passengers." *Id.* at 303-304 citing *Spencer v. Knapheide Truck Equipment Co.,* 183 F. 3d 902, 906 (8th Cir. 1999) (stating such practice was "negligent, at best.").

Consequently, to proceed beyond the properly supported motion for summary judgment filed by the Defendants, Jerido must first demonstrate an objectively substantial risk of serious harm existed and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Jerido must then satisfy the subjective component. To do so, Jerido

"must [show] that the defendant[s] subjectively knew that [he] faced a substantial risk of serious harm.  The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."  *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).   In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear *felt by [the] [p]laintiff*."  *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added).   Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also draw that inference."  *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005).

Based on the Eleventh Circuit's express holding in *Smith,* and the undisputed evidence before the court, the court concludes that Jerido has failed to demonstrate that "an objectively substantial serious risk of harm," *Farmer, 5*11 U.S. at 828, was posed by the conditions of the van in which he was transported.   Accordingly, the Court concludes that Jerido has failed to demonstrate the objective component necessary to establish deliberate indifference.[7]  Thus, in light of the foregoing, summary judgment is due to be granted in favor of the Correctional Defendants on the claim alleging they acted with deliberate indifference to Jerdio's safety.

---

[7]  With respect to the subjective component, although Plaintiff alleges Defendant McDowell told him that the van was not fit for transporting people (Doc. 1 at p. 7), which Defendant McDowell denies, (Doc. 15-2 at p. 3; 34-1 at p. 3), there is no evidence in the record from which the Court could conclude that any Defendant was aware of a sufficiently dangerous condition with the van.  This is so, especially where as here, the court has concluded that the Plaintiff has failed to satisfy the objective component with respect to the condition of the van. *Smith,* 252 Fed. App'x at 303-04.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The Defendants' motion to dismiss and or for summary judgment be GRANTED.

2.      Judgment be GRANTED in favor of the Defendants.

3.      This case be DISMISSED with prejudice.

4.      Costs be taxed against the Plaintiff.

On or before **January 27, 2022** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 13th day of January, 2022.


/s/ Charles S. Coody
UNITED STATES MAGISTRATE JUDGE